**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE | CASE NO. 21-01353 (MCF) |
| RAMONA ROBLES LUGO | CHAPTER 13 |

**RESPONSE TO USDA'S "MOTION IN COMPLIANCE WITH ORDER"**

**TO THE HONORABLE COURT:**

Comes now the Debtor, through the undersigned attorney, who respectfully states, alleges and prays as follows:

1.      On March 11, 2022, this Court entered the following Order:

> "The USDA Rural Development is ordered to show cause within 30 days why the amount of $53,221.78 listed in its claim number 2-1 as subsidy recapture should not be disallowed as secured for failure to provide evidence in support of its secured status (Docket Nos. 32, 33 and 37)."
> (See Docket entry no. 39)

2.      In response to the Court's Order, on April 7, 2022, the USDA filed a "Motion in Compliance" (Docket 47) and a "Motion Submitting Translation of Document in Spanish in Submitted in Support of Motion in Compliance" (Docket 48).

3.      In its Motion in Compliance, the USDA argues that the subsidy fees are secured claims since the Debtor executed a "Subsidy Repayment Agreement" stating that her property is "pledged as security for repayment of the subsidy received or to be received.".  The creditor also indicates that the mortgage deeds create liens to guarantee the amounts $61,515.00 and $3,765.00 respectively to protect against "any loss" sustain by the mortgagee in its "insurance of payment".  Finally, it asserts that the confirmation order entered in Debtor's previous bankruptcy case has preclusive effect over the issue.

4.      In response to the USDA's arguments, the Debtor argues as follows.  The "Subsidy Repayment Agreement" is not a public deed and it was not filed in the property registry.  Therefore, it did not create a lien to guarantee repayment of the subsidy recapture fees.

5.      Second, the liens in the amounts of $61,515.00 and $3,765.00 respectively are designated in the deeds to secure "losses sustained when the note to an insured lender", not to secure repayment of subsidy recapture fees.

6.      Finally, according to the terms "Subsidy Recapture Agreement" the amount of subsidy to be repaid **will be determined** when the principal and interest balance is paid**.** Debtor's previous chapter 13 plan did not propose to fully satisfy the principal and interest on the mortgage, but rather cure arrears.  Therefore, the amount and validity of the subsidy recapture fees was not an issue that was ripe for adjudication in Debtor's prior case nor that was necessarily determined by the confirmation order.

7.      For the reasons that follow, the Debtor requests this Court to find that the USDA has no provided evidence to sustain the secured status of the subsidy recapture fees.

## STATEMENT OF RELEVANT FACTS

8.      On December 20, 1988, Debtor Ramona Robles Lugo (hereinafter "Debtor") executed two (2) promissory notes in favor of the United States of America, acting thru the Department of Agriculture, Farmers Home Administration (POC 2, page 5 and page 24).

9.      The first Note was for the amount of $41,010.00 and the second Note for the amount of $2,510.00.  Aside from their amount, both notes contained the same terms and conditions (POC 2, page 5 and page 24).

10.     To guarantee payment of the notes, on that same day, the Debtor executed two Mortgage Deeds before notary public Juan Santiago Ramirez.

11.     The Mortgage Deed that was executed to guarantee the Note for the amount of $41,010.00 was the notary public's 37th Deed for the year 1988 (POC 2, pages 7-22).

12.     The Mortgage Deed that was executed to guarantee the Note of the amount of $2,510.00 was the notary public's 38th deed for the year 1988 (POC 2, pages 26-46).

2

13.     Aside from their amount, both Mortgage Deeds contained the same terms and conditions.

14.     Paragraph "FIFTH" of the Mortgage Deeds provides for the creation of a voluntary mortgage lien over Debtor's property specifying that the lien only guarantees payment of "all amounts as specified in paragraph NINTH thereof".  Said paragraph states in its relevant:

> FIFTH: That, in consideration of said loan and (a) at all times the note is held by the mortgagee, or in the event the mortgagee should assign the mortgage without insurance of the payment of the note, in guarantee of the amount of the note as specified in subparagraph (one) of paragraph NINTH hereof, with interest at the rate stipulated, and to secured prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, (b) at all times when the note is held by an insured lender, in guarantee of the amounts specified in subparagraph (Two) of paragraph NINTH thereof for securing performance of the mortgagor's agreement hereinto indemnify and save harmless the mortgagee against loss under its insurance endorsements by reason of any default by the mortgagor, and (c) in any event and at all times whatsoever, in guarantee of the additional amounts specified subparagraph (Three) of paragraph NINTH hereof and to secure the performance of every covenant and agreement of the mortgagor contained herein or in any supplementary agreement, the mortgagor hereby constitutes a voluntary mortgage in favor of the mortgagee on the property describe in paragraph ELEVENTH hereof…**it being understood that the this lien will continue in full force and effect until all amounts as specified in paragraph NINTH thereof**, **with interest before and after maturity until paid, have been paid in full."**

15.     In turn, Paragraph NINTH of the Mortgage Deeds indicates that when the mortgage is "held by the mortgagee", the amounts secured by the mortgage are those stated in subsection (One) of paragraph NINTH.  According to subsection (One) of paragraph NINTH the lien guarantees the following amounts: $41,010.00 plus interest at the rate of 9%.  Said paragraph states:

> "NINTH: The amounts guaranteed by this mortgage are as follows:
> **One**.  At all times when the note mentioned in paragraph THIRD of this mortgage **is held by the mortgagee**, or in the event

mortgagee should assign this note **without insurance of the note**: $41,010.00 the principal of said note together with interest as stipulated therein at the rate of 9.0% per annum;

16.     Paragraph NINTH further provides that when the mortgage is held by "an insured lender", the amounts secured by the mortgage are those stated in subsection (Two) of paragraph NINTH.   According to paragraph NINTH subsection (Two), the lien guarantees the following amounts when it is held by "an insured lender": $41,010.00 to indemnify the mortgagee for advances to the insured lender; and $61,515.00 to indemnify the mortgagee against any loss it might sustain under its insurance of payment of the note.   Subsection (two) of paragraph nine provides:

> "**Two**.  At all times **when said note is held by an insured lender**:
> (A) $41,010.00 for indemnifying the mortgagee for advances to the insured lender by reason of mortgagor's failure to pay the installments as specified on the note, with interest as stated in paragraph SIXTH;
> (B) $61,515.00 for indemnifying the mortgagee further against any loss it might sustain under its insurance of payment of the note"

17.     Finally, subsection (Three) of paragraph NINTH indicates the additional amounts that the mortgage guarantees "in any event and at all times whatsoever".  These amounts are: (A) $16,404.00 for default interest; (B) $8,202.00 for taxes insurances and other advancements for preservation and protection of the mortgage; (C) $4,101.00 for costs, expenses and attorney's fees in case of foreclosure; (D) $4,101.00 for costs and expenses to defend against other persons interfering with right of possession of mortgagor.   Subsection (Three) of paragraph NINTH provides:

> "**Three**.  In any event and at all times whatsoever:
> (A) $16,404.00 for default interest;
> (B) $8,202.00 for taxes insurances and other advancements for the preservation and protection of this mortgage, with interest at the rate stated in paragraph SIXTH;

4

(C) $4,101.00 for costs, expenses and attorney's fees in case of foreclosure;

(D) $4,101.00 for costs and expenses incurred by the mortgagee in proceedings to defend its interests against any other person interfering with right or contesting the of possession of mortgagor to the property as provided in paragraph SIXTH (thirteen)

18.     Paragraph NINTH of the mortgage deeds does not indicate that the mortgage guarantees the repayment of subsidy recapture fees.  As a matter of fact, the words "subsidy" and "recapture" are not written in paragraph NINTH of the mortgage deeds.

19.     The amounts guarantee by the mortgages are described in the property registry as follows:

> "According to Deed #37, executed in Toa Alta, on December 20, 1988, before notary Juan Santiago Ramirez, said buyer institutes a mortgage on this property as guarantee of a promissory note in favor of the United States of America, through the Farmer Homes Administration. Principal: $41,010.00 with an annual percentage rate of 9.0%, expiring 33 years from the date on the promissory note, additional credits: $41,010.00 as upfront payment to the lender; $61,515.00 for any loss; $16,404.00 for interests after the arrears; $8,202.00 for taxes, insurance, and other upfront payments; $4,101.00 for legal fees in case of foreclosure; and $4,010.00 for fees. Appraised at $41,010.00 for auctioning purposes. (Docket 37, Exhibit 1).

20.     There is no indication in the Property Registry that the mortgage guarantees the payment of subsidy recapture fees.  As a matter of fact, the word "subsidy" and the word "recapture" are not written in the Property Registry.  (Docket 37, Exhibit 1).

21.     On December 20, 1998, the Debtor and the United States Department of Agriculture, Farmer Home Administration, executed a "Subsidy Repayment Agreement". (Docket 48, Exhibit 1).

22.     The "Subsidy Repayment Agreement" provides that Debtor's real property "is pledged as security for repayment of the subsidy received or to be received." (Docket 48, Exhibit 1, ¶ 3).

5

23.     Paragraph 4 of the "Subsidy Repayment Agreement" provides:

> "I (we) understand that so long as I (we) continue to own the property and occupy the dwelling as my (our) residence, I (we) may repay the principal and interest owed on the loan and defer repaying the subsidy amount until title to the property is conveyed or the dwelling is no longer occupied by me (us) as residence. If such a request is made, the amount of subsidy to be repaid will be determined when the principal and interest balance is paid. The mortgage securing the FmHA RH loan(s) will not be released of record until the total amount owed the Government has been repaid." (Docket 48, Exhibit 1, ¶ 4).

24.     The "Subsidy Repayment Agreement" is not a public deed and was not executed by and before a notary public.  (Docket 48, Exhibit 1)

25.     There is no mention of the "Subsidy Repayment Agreement" under Debtor's parcel property number in the Puerto Rico Property Registry.  (Docket 37, Exhibit 1).

26.     On November 30, 2015, the Debtor filed a bankruptcy petition under the provision of Chapter 13 of the Bankruptcy Code.  (Case no. 15-09515).

27.     On March 14, 2016, the USDA filed Proof of Claim no. 2 in Debtor's 2015 petition.  (POC 2, Case no. 15-09515).

28.     The USDA did not file the "Subsidy Recapture Agreement" in Debtor's prior bankruptcy case. (POC 2, Case no. 15-09515).

29.     POC 2 filed in Debtor's 2015 petition was a claim for the amounts guaranteed pursuant to paragraph 9 of the mortgage deeds. (POC 2, Case no. 15-09515).

30.     The USDA did not file a separate claim for the subsidy recapture fees in Debtor's 2015 petition.

31.     The Debtor currently occupies the property subject to USDA's mortgage as her principal residence. (Docket 1, page 2).

## APPLICABLE LAW

32.     Pursuant to Puerto Rico Law, every mortgage must satisfy three essential requisites in order to be validly constituted: (i) "secure the fulfillment of a principal obligation;" (ii) be "stipulated in a deed" and; (iii) it shall be recorded at the Registry of Property. P.R. Laws Ann. Tit. 30, § 2607. In its linguistic term, "constitutive" stands for: (i) "[m]aking a thing what it is; essential[] and (ii) [h]aving power to institute, establish, or enact." Random House Webster's Dictionary (Random House, Inc., 1990). In re Ramos, 493 B.R. 355, 365 (2013)

33.     Without the recording, "[t]he mortgage deed turn[s] the promissory note into a personal obligation, unsecured, solely enforceable against the maker." Roig Commercial Bank v. Dueno, 617 F. Supp. 913, 915 (D.P.R. 1985). In other words, "[a] creditor [will] only ha[ve] an unsecured personal obligation regarding the underlying debt. Soto-Rios v. Banco Popular de Puerto Rico, 662 F. 3d 112, 121 (1st Cir. 2011); see also In re Amelan, 499 B.R. 236, 238 (2013).

34.     The Principle of Specialty that applies to Puerto Rico's Registry and Mortgage requires that documents filed in the Registry be **clear and specific** in terms of the content, extension and title of the right whose inscription is requested. Westernbank v. Registradora, 174 D.P.R. 779, 788 (2008); Cabañas v. Registrador, 8 D.P.R. 73 (1905).

35.     Pursuant to the Principle of Specialty, a mortgage deed must state in clear and specific terms each obligation that is being secured by the mortgage.  Specifically, for each credit that the mortgage secures, the mortgage deed must establish **the type and the amount of each credit** so that the same may access the Property Registry.  To that effect Article 147.1 of

Regulation No. 2674[1] ("PR's Mortgage Regulation") provides that "a mortgage may secure any type of obligation but **it is indispensable that amount be fixed in a monetary amount**".[2]

36.     As explained by a Bankruptcy Court decision from this District, "the principles of publicity and specialty of the Registry of Property **do not admit the existence of secret liens**". Accordingly, for a lien to become effective, the same must be recorded in the Registry of Property.  See In re Padilla Ibanez, Case no. 21-01560 (Puerto Rico) Opinion and Order dated January 27, 2022, pages 12-13, citing Vazquez Morales v. Caguas Fed. Sav. & Loan Ass'n of P.R., 118 P.R. Dec. 806 (1987) (other citations omitted).

37.     In turn**,** Fed. R. of Bankr. Proc. 3001(d) states that: "If a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected."

38.     In addition, the Proof of Claim Official Form ("Form 410") directs creditors who claim a security interest over estate property to "[a]ttach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded")  (See Official Form 410, section 9, our bold).

---

[1] The Regulation applicable at all times relevant to the facts of the instant case.

[2] "The text of the article provides in the spanish language:
"La hipoteca puede asegurar toda clase de obligaciones, **pero es indispensable que se fije el importe de éstas en una cantidad de dinero**, o se determine la cantidad máxima de dinero de que responde el bien hipotecado. El importe de la obligación asegurada con la hipoteca o la cantidad máxima de que responda la finca hipotecada **deberá ser fijada en moneda de uso oficial** en Puerto Rico o señalando la equivalencia de las monedas extranjeras en dicho signo monetario." (our bold).

## DISCUSSION

### A. The "Subsidy Repayment Agreement" did not create a lien to guarantee repayment of the subsidy recapture fees since it is not contained in a public deed and was not filed in the property registry

39.     On April 7, 2022, the USDA filed a certified English translation of the "Subsidy Repayment Agreement" executed by the Debtor and the USDA. (Docket 48, Exhibit 1). Through this contract, the Debtor became obligated to "repayment of the subsidy granted to me in the form of interest credits" (Docket 48, Exhibit 1, ¶ 2).

40.     The USDA argues that this contract creates a lien to guarantee the obligation to repay the subsidies because in the same the Debtor agreed that her real property was "pledged as security for repayment of the subsidy received or to be received."

41.     However, it is well settled that mortgages are constituted through execution of public deeds that must be in filed and recorded in the property registry. In re Ramos, 493 B.R. 355, 365 (2013)

42.     As such, even though the agreement does state that the real property was "pledged" to secure the obligation to repay the subsidies, such obligation remains a personal obligation until a public deed specifically securing the type and amount of the obligation is filed in the Property registry.

43.     Since the USDA has not provided evidence to show that the "Subsidy Repayment Agreement" was elevated into public deed and that it was filed in the Property Registry, the contract only created a personal obligation, not a lien over Debtor's property.

44.     Accordingly, it is proper to hold that the "Subsidy Repayment Agreement" is not evidence of the secured status of the subsidy recapture fees.

**B. The mortgage deeds and the property registry do not specify that the mortgage guarantees an amount for repayment of the subsidy recapture fees**

45.　The USDA argues that the mortgage deeds provide for a specific amount that the mortgage guarantees for repayment of the subsidies recapture fees.  The creditor makes reference to subsection (two) of paragraph NINTH of the deed which provides that the mortgages guarantee the amounts of $61,515.00 and $3,765.00 respectively "for indemnifying the mortgagee further against any loss it might sustain under its insurance of payment of the note".  The USDA asserts that these sums of $61,515.00 and $3,765.00 are recorded and identified to secure payment of "any loss" to the mortgagee.

46.　However, a comprehensive reading of the totality of Paragraph NINTH of the deeds reveals that the amounts of $61,515.00 and $3,765.00 guarantee "losses" when the mortgagee has **assigned the note to an insured lender** and has sustain a loss **under its insurance payment of the note**.

47.　To that effect, paragraph NINTH of the deeds provides:

> "NINTH: The amounts guaranteed by this mortgage are as follows:
> **One**.  At all times when the note mentioned in paragraph THIRD of this mortgage **is held by the mortgagee**, or in the event mortgagee should assign this note **without insurance of the note**: $41,010.00 the principal of said note together with interest as stipulated therein at the rate of 9.0% per annum;
> **Two**.  At all times when said note **is held by an insured lender**:
> (A) $41,010.00 for indemnifying the mortgagee for advances to the insured lender by reason of mortgagor's failure to pay the installments as specified on the note, with interest as stated in paragraph SIXTH;
> (B) $61,515.00 **for indemnifying the mortgagee further against any loss it might sustain under its insurance of payment of the note**"
> **Three.**  In any event and at all times whatsoever:
> (A) $16,404.00 for default interest;
> (B) $8,202.00 for taxes insurances and other advancements for the preservation and protection of this mortgage, with interest at the rate stated in paragraph SIXTH;
> (C) $4,101.00 for costs, expenses and attorney's fees in case of foreclosure;

(D) $4,101.00 for costs and expenses incurred by the mortgagee in proceedings to defend its interests against any other person interfering with right or contesting the of possession of mortgagor to the property as provided in paragraph SIXTH (thirteen)."

48.     The above cited subsection (two) of paragraph NINTH is the only place in the mortgage deeds that mentions the amount of $61,515.00 and the amount of $3,765.00 respectively.  As specifically stated in the deeds, these amounts only guarantee "losses sustained when the note to an insured lender".  These amounts are not designated to secure repayment of subsidy recapture fees.

49.     As a matter of fact, paragraph NINTH of the mortgage deeds does not provide any amounts that the lien secures to guarantee repayment of the subsidies.  Therefore, the subsidy recapture fees are not an amount secured by the mortgage since the deed established that all amounts secured by the mortgages are listed under paragraph NINTH.  See POC 2, page 29, ¶ 14-16 where it is stated: "[i]t being understood that this lien will continue in full force and effect until **all amounts as specified in paragraph NINTH thereof**, with interest before and after maturity until paid, have been paid in full.".

50.     In sum, neither the mortgage deeds nor the Property Registry state that the amounts guarantee by the mortgage are to secure repayment of subsidy recapture fees. Therefore, these documents do not sustain the secured status of such obligation.

### C. The amount or validity of the subsidy recapture fees was not litigated nor necessarily determined by the confirmation order entered in Debtor's previous filing

51.     When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike. 11 U.S.C. § 1327(a). Therefore, a confirmation order has preclusive effect and forecloses relitigation of "any issue **actually litigated** by the parties and any issue **necessarily determined** by the confirmation order."  See Bullard v. Blue Hills Bank, 575 U. S. 496, 502

11

(2015). Stated differently, although a final order with preclusive effect, the confirmation order will <u>only</u> preclude an issue or matter that was either **litigated or necessarily determined at confirmation**. <u>In re Haskins</u>, 563 B.R. 177, 186 (Bankr. W.D. Va. 2017)

52.    The "Subsidy Repayment Agreement" indicates that the if the Debtor occupies the property as her residence, the amount due for repayment of the subsidies "will be determined" after "the principal and interest balance is paid".  To that effect, paragraph 4 of the subsidy recapture agreement provides:

> "I (we) understand that so long as I (we) continue to own the property and occupy the dwelling as my (our) residence, I (we) may repay the principal and interest owed on the loan and defer repaying the subsidy amount until title to the property is conveyed or the dwelling is no longer occupied by me (us) as residence. If such a request is made, the amount of subsidy to be repaid will be determined when the principal and interest balance is paid. The mortgage securing the FmHA RH loan(s) will not be released of record until the total amount owed the Government has been repaid." (Docket 48, Exhibit 1, ¶ 4).

53.    The promissory notes executed by the Debtor in favor of the USDA had a maturity date of December 20, 2021 (POC 2, page 5 and page 24).  In the instant case, the Debtor is proposing to pay in full the mortgages owed to USDA since the loans mature during the life of the plan.  See Docket 18.  Under this scenario, the amount and validity of the subsidy recaptures fees becomes an issue that must be litigated and necessarily determined at confirmation of the instant case.

54.    However, in Debtor's prior bankruptcy case, the mortgages did not mature during the life of the plan.  The Chapter 13 plan in the previous case did not provide for the payment in full of the loans, but rather for curing the arrears owed on the mortgage.

55.    As such, the amount and status of subsidy recapture fees was not an issue that was litigated nor necessarily determined at confirmation in Debtor's prior case. As stated in the "Subsidy Repayment Agreement" such claim is "**determined**" <u>after</u> the principal and interest of

12

the mortgage is paid in full.  Therefore, this matter was not "ripe" for adjudication in Debtor's

previous case nor it was a relevant for the confirmation purposes.

56.     Accordingly, the confirmation order entered in Debtor's prior case does not have

preclusive effect over this issue.

**WHEREFORE** it is respectfully requested from this Honorable Court to grant the

present motion and ruled that the USDA has not provided evidence to sustain the secured status

of the subsidy recapture fees.

**NOTICE**

YOU ARE HEREBY NOTIFIED THAT YOU HAVE FOURTEEN (14) DAYS FROM THE DATE OF
THIS NOTICE TO FILE AN OPPOSITION TO THE FOREGOING MOTION AND TO REQUEST A
HEARING. IF NO OPPOSITION IS FILED WITHIN THE PRESCRIBED PERIOD OF TIME, THE
MOTION WILL BE DEEMED UNOPPOSED AND MAY BE GRANTED WITHOUT FURTHER
HEARING UNLESS (1) THE REQUESTED RELIEF IS FORBIDDEN BY LAW; (2) THE
REQUESTED RELIEF IS AGAINST PUBLIC POLICY; OR (3) IN THE OPINION OF THE COURT,
THE INEREST OF JUSTICE REQUIRES OTHERWISE. IF A TIMELY OPPOSITION IS FILED, THE
COURT WILL SCHEDULE A HEARING AS A CONTESTED MATTER.

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on this day I electronically filed this document with the
Clerk of the Court using the CM/ECF system which will automatically send notification of such
filing to all CM/ECF participants.

In San Juan, Puerto Rico, this 9th day of May of 2022.

**MAYORAL & MANGUAL, P.S.C.**
PMB 157 PO Box 194000
San Juan PR 00919-4000
Tel. (787) 754-2002 Fax (787) 296-9892

*s/ Eduardo J. Mayoral García*
**EDUARDO J. MAYORAL GARCÍA**
**USDC PR 224607** emayoral@gmail.com

13